# JACKSONWHITE
## ATTORNEYS AT LAW
### A Professional Corporation

40 North Center, Suite 200
Mesa, Arizona 85201
(480) 464-1111
Attorney for Plaintiff
By:     Michael R. Pruitt, No. 011792

## IN THE UNITED STATES DISTRICT COURT,

## DISTRICT OF ARIZONA

| | |
|---|---|
| Leah Greeves, filing individually and on behalf of all others similarly situated; Jacob "Jake" Clark, filing individually and on behalf of all others similarly situated; and Valerie Waeschle, filing individually and on behalf of all others similarly situated;<br><br>        Plaintiffs<br><br>vs.<br><br>Sepracor, Inc., a Delaware corporation;<br><br>        Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**The Fair Labor Standards Act**<br>**29 U.S.C. § 201**<br><br>**Collective Action**<br><br>**(Jury trial requested)** |

Plaintiffs, Leah Greeves, Jacob "Jake" Clark and Valerie Waeschle (collectively "Plaintiffs"), individually and on behalf of all other similarly situated current and former employees of Sepracor, Inc. ("Sepracor"), by and through their counsel undersigned, for their complaint, allege as follows:

## JURISDICTIONAL ALLEGATIONS

1.      This action arises under the statutes of the United States for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.

2.      This Court's jurisdiction over this matter is conferred under 29 U.S.C. § 1331 since this matter arises under a federal statute.

3.      Under the provisions of 29 U.S.C. § 216(b), this Court has jurisdiction over this matter as an action brought by the Plaintiffs as individuals and as a collective action brought on behalf of current and former similarly situated employees of Sepracor.

4.      Defendant Sepracor is subject to the provisions of the FLSA since it is involved in interstate commerce and generates annual revenue in excess of $500,000.

5.      This court has subject matter jurisdiction in this matter, and venue is appropriate to this court because many of the acts outlined herein occurred within this District in the State of Arizona, Sepracor conducts business within this District in the State of Arizona, and because Leah Greeves resides within this District in the State of Arizona.

6.      Subject matter jurisdiction is also conferred under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the Parties reside in different states.

## PARTIES

7.      Plaintiff Leah Greeves is filing this collective action as an individual and on behalf of all other similarly situated current and former Sepracor employees.

8.      Plaintiff Greeves is currently a resident of Tempe, Arizona and was employed by Sepracor as a Pharmaceutical Sales Specialist 1 and then as a Pharmaceutical Sales Specialist 2. She was assigned to work in the Tucson, Arizona area and later in the Scottsdale, Arizona area from approximately June 2004 until approximately December 2007.

9.      Plaintiff Jacob "Jake" Clark is filing this collective action as an individual and on behalf of all other similarly situated current and former Sepracor employees.

10.     Plaintiff Clark is currently a resident of Springville, Utah and was employed by

Sepracor as a Pharmaceutical Sales Specialist 2. He was assigned to work in a geographic area that included areas located on the south side of the Salt Lake City metropolitan area continuing south to St. George, Utah, from approximately March 2006 through approximately April 2008.

11.     Plaintiff Valerie Waeschle is filing this collective action as an individual and on behalf of all other similarly situated current and former Sepracor employees.

12.     Plaintiff Waeschle is currently a resident of Scottsdale, Arizona and was employed by Sepracor as a Pharmaceutical Sales Specialist 2. She was assigned to work in the geographic areas of Scottsdale, Arizona, Payson, Arizona and other communities located in the White Mountain region of Arizona, from some time in 2004 until approximately November 2006.

13.     Defendant Sepracor is incorporated in the state of Delaware and has its corporate headquarters in Marlborough, Massachusetts. Sepracor conducts operations and sales throughout the United States.

14.     Sepracor is in the business of, among other things, developing, licencing and selling various pharmaceutical products, with an emphasis on products related to the treatment of respiratory and central nervous system disorders, including such products as a prescription sleep aid and treatments for asthma and Chronic Obstructive Pulmonary Disease (COPD).

## BACKGROUND FACTS

15.     Under the provisions of the Fair Labor Standards Act ("FLSA"), employees are required to receive overtime wages at a rate of 1 ½ times their normal hourly rate for hours they work in excess of forty during any particular workweek unless they qualify for an FLSA exemption.

16.     This collective action arises from an ongoing illegal and improper scheme by Sepracor

to systematically and willfully violate the provisions of the FLSA by knowingly and deliberately failing to pay a class of current and former employees located throughout the country, known herein as Pharmaceutical Sales Specialists, the overtime wages legally due them under the FLSA.

17.     The group referred to herein as Pharmaceutical Sales Specialists is made up of, but not necessarily limited to, those current and former Sepracor employees working as Pharmaceutical Sales Specialist 1, Pharmaceutical Sales Specialist 2 and Senior Pharmaceutical Sales Specialists.

18.     Plaintiffs, on behalf of themselves and others similarly situated, allege that Sepracor knowingly and willfully violated, and continues to violate, the provisions of the FLSA by misclassifing all of its Pharmaceutical Sales Specialists as exempt from the overtime provisions of the FLSA.

19.     None of the current and former employees working for Sepracor as Pharmaceutical Sales Specialists should legally and rightfully qualify for any of the overtime exemptions contained in the FLSA.

20.     Those working as Pharmaceutical Sales Specialists are primarily responsible for visiting, calling on and contacting doctors and other healthcare professionals in the Pharmaceutical Sales Specialist's designated work area for the purposes of promoting Sepracor products primarily through disseminating product information and samples, thereby influencing those doctors and healthcare professionals to prescribe products manufactured and developed by Sepracor to their patients during the course of their practice.

21.     Pharmaceutical Sales Specialists often held working lunches at which they provided meals and refreshments to doctors and other healthcare professionals. During these lunches

4

Pharmaceutical Sales Specialist dispensed information and samples of Sepracor products, worked to increase the number of prescriptions written for Sepracor products and generally performed work for the benefit of Sepracor.

22.    Those working as Pharmaceutical Sales Specialists work out of an office located in their homes where they complete company required paperwork, check e-mail and voice mail, make telephone calls, schedule appointments and travel, complete Sepracor required training on Sepracor products, store the items and samples they disseminate to the doctors and other healthcare professionals they contact and other company required activities.

23.    Pharmaceutical Sales Specialists are informed by their supervisors that they should be out of the home office contacting doctors and other healthcare professionals during specific hours of the day and that they need to complete company required paperwork and other duties at their home office prior to and after those hours. Pharmaceutical Sales Specialists also routinely make work related calls on their cell phones while traveling to and from doctors offices.  Consequently, most if not all of the time spent traveling from the home office to their first appointment/contact and from their last appointment/contact to the home office is compensable work time under the FLSA and the Portal to Portal Act of 1947, 29 U.S.C. § 251 et seq.

24.    The work and promotional efforts of Pharmaceutical Sales Specialists outlined herein are performed according to Sepracor specifications, requirements and training and are specifically designed to increase the number of prescriptions written for Sepracor products by the doctors the Pharmaceutical Sales Specialists contact.

25.    During her employment, Plaintiff Waeschle was chosen by Sepracor to be a "trainer"

and underwent a one week course in Boston, Massachusetts on how to train other Pharmaceutical Sales Specialist in the very specific techniques and guidelines that Sepracor wanted and required its Pharmaceutical Sales Specialists to utilize during the course of their duties.

26.    On one or two occasions, Plaintiff Waeschle traveled to Denver Colorado for a one week session in which she trained other Pharmaceutical Sales Specialist according to the techniques and guidelines she had learned in Boston, Massachusetts.

27.    While working as a trainer, Plaintiff Waeschle, was still expected and required by Sepracor to perform some of her Pharmaceutical Sales Specialist 2 duties.

28.    The ratings and job performance of Pharmaceutical Sales Specialists are based, in part, on the number of prescriptions written for Sepracor products among the doctors in the Pharmaceutical Sales Specialists' designated work areas and by number of sales and market share for Sepracor products sold by various pharmacies.

29.    Sepracor has knowledge that its Pharmaceutical Sales Specialists do not actually sell any Sepracor products to any of the doctors or other healthcare professionals they visit, contact, call on or telephone during the course of their workday.

30.    All Pharmaceutical Sales Specialists are expected by Sepracor to follow specific outlines, scripts, talking points, practices and/or procedures in the performance of their job duties attempting to get those they contact to prescribe Sepracor products.

31.    All Pharmaceutical Sales Specialists are required to attend several Plan of Action meetings each year, including national, regional and local meetings, where they receive training in the specific steps and detailed procedures they are to use in the performance of their duties.

32.     All Pharmaceutical Sales Specialists are given clear requirements by Sepracor for the number of individuals they are expected to contact in their designated area in a specific time period.

33.     Pharmaceutical Sales Specialists routinely hold working lunches each week for doctors and other healthcare professionals at which the Pharmaceutical Sales Specialists provide food, discuss Sepracor products, pass out samples of Sepracor products to those invited to the lunch and perform other tasks designed to promote Sepracor products and increase the number of prescriptions written for Sepracor products.

34.     Plaintiffs and most if not all current and former Sepracor Pharmaceutical Sales Specialists routinely work or worked in excess of forty hours in any workweek.

35.     Sepracor requires and expects all of its current and former Pharmaceutical Sales Specialists to routinely work in excess of 40 hours in a workweek.

36.     Upon information and belief, Sepracor willfully and illegally classifies all of its Pharmaceutical Sales Specialist employees as exempt from the overtime wage provisions of the FLSA under the exemption in the FLSA designated for those engaged in outside sales. This is despite the knowledge by Sepracor that its Pharmaceutical Sales Specialists are not involved in the actual sale of any Sepracor products.

37.     The job duties performed by Sepracor Pharmaceutical Sales Specialists are such that according to the provisions of the FLSA and the Code of Federal Regulations ("CFR"), they should rightly be classified as employees who are non-exempt to the overtime wage provisions of the FLSA and therefore they should legally be paid overtime wages by Sepracor for any hours they work over 40 in any workweek.

38.    All decision(s) regarding whether or not to pay overtime wages to Sepracor Pharmaceutical Sales Specialists throughout the country was done with the knowledge of and at the direction of members of Sepracor's top level, centralized corporate management. This decision was applied uniformly and consistently across all regions of the country and to all areas of Sepracor's business operations employing Pharmaceutical Sales Specialists.

39.    Upon information and belief, Sepracor employs human resources personnel and legal counsel to ensure compliance with all applicable state and federal statutes, including the FLSA provision regarding payment of overtime wages.

40.    Sepracor knows or should have known that its former and current policies regarding payment of overtime wages as described herein violate the FLSA.

41.    The illegal policies and practices described herein are part of a centralized, nationwide policy, practice and scheme developed and orchestrated by the corporate headquarters of Sepracor and applied uniformly and consistently to all current and former Pharmaceutical Sales Specialist no matter what geographical area, state or business organizational designation in which they work(ed).

42.    As an employer, Sepracor is responsible for the illegal conduct and policies described herein related to the failure to comply with the provisions of the FLSA for those current and former employees in the Pharmaceutical Sales Specialist group.

43.    Any current or past classification by Sepracor of a Pharmaceutical Sales Specialist as exempt from the overtime  pay provisions of the FLSA is a willful violation of the FLSA.

44.    As a result of the actions of Sepracor in not paying legally required overtime wages to current and former Pharmaceutical Sales Specialists, the Plaintiffs and all other similarly situated

employees have suffered economic damages.

45.     The actions of Sepracor in deliberately failing to pay its Pharmaceutical Sales Specialist overtime wages was done for the purpose of enriching and benefitting Sepracor.

46.     Pursuant to the provisions of 29 U.S.C. § 216(b), Plaintiffs seek to pursue an action on behalf of themselves as individuals and as a collective action on behalf of all similarly situated current and former Sepracor Pharmaceutical Sales Specialists employed within the United States who have not been paid their legally required overtime wages. Plaintiffs reserve the right to update and amend the individuals included in this action should Plaintiffs become aware of additional similarly situated current and former employees of Sepracor or if the definition of who qualifies as a similarly situated employee needs to be modified or updated during the course of these proceedings.

47.     Plaintiffs have all given written consent to be a party to this action, copies of which are attached as Exhibit "A."

**Count I**
**(Violation of the FLSA, 29 U.S.C. § 201 et seq.)**

48.      All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

49.     Plaintiffs and similarly situated current and former Sepracor employees working as Pharmaceutical Sales Specialists have been, and continue to be, illegally and improperly paid on a salary basis.

50.     Plaintiffs and similarly situated current and former Sepracor employees working as

Pharmaceutical Sales Specialists routinely worked, and continue to work, in excess of forty hours during their workweek without receiving overtime compensation in violation of the FLSA.

51.     Since Plaintiffs and similarly situated current and former Sepracor employees working as Pharmaceutical Sales Specialists routinely performed work required for their job prior to leaving at the start of the workday and after returning to their home office at the end of the workday, much if not all of such travel time is compensable and should be counted toward the hours worked in each workweek.

52.     The time spent by Plaintiffs and similarly situated current and former Sepracor employees working as Pharmaceutical Sales Specialists during required working lunches is time spent working and should be counted toward the hours worked in each workweek.

53.     Plaintiffs and similarly situated current and former Sepracor employees working as Pharmaceutical Sales Specialists were and continue to be legally entitled to receive overtime compensation at a rate of one and one-half (1 ½ ) times their regular hourly wage for any hours worked in excess of forty hours in any workweek, as outlined in the FLSA.

54.     Plaintiffs and similarly situated current and former Sepracor employees working as Pharmaceutical Sales Specialists do not qualify for any of the overtime wage exemptions outlined in the FLSA.

55.     The policy of Sepracor to not pay overtime wages to Plaintiffs and similarly situated current and former Sepracor employees working as Pharmaceutical Sales Specialists, as previously outlined, violates the provisions of the FLSA and was and continues to be a willful act.

56.     As a result of the illegal and improper policy of Sepracor regarding the payment of

overtime wages as previously outlined, Plaintiffs and similarly situated current and former Sepracor employees working as Pharmaceutical Sales Specialists have suffered economic damages in an amount to be proved at trial.

57.     The policy of Sepracor to not pay overtime wages to Plaintiffs and similarly situated current and former Sepracor employees working as Pharmaceutical Sales Specialists was willful entitling Plaintiffs and similarly situated collective action members to recover damages and collect overtime wages for the three years preceding the filing of this action or their joining of this collective action as outlined in the FLSA and 29 U.S.C. § 255(a).

58.     Defendant Sepracor is also liable to Plaintiffs and similarly situated current and former Sepracor employees working as Pharmaceutical Sales Specialists for damages as provided for under all applicable statues including liquidated damages in an amount equal to their damages and their reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiffs request that this court enter judgment in their favor and against the Defendant as follows:

A.     Declare and certify that this action can proceed as a collective action on behalf of Plaintiffs and similarly situated current and former employees of Sepracor;

B.     That because there is a statute of limitations associated with collection of damages under the FLSA, this court should send out, or allow to be sent, notice to all similarly situated current and former Sepracor employees working as Pharmaceutical Sales Specialists as soon as possible informing them of the opportunity to join or "opt in" to this collective action by

filing consent to join forms with the Court;

C.       Declare that Plaintiffs and those similarly situated who opt-in to this collective action are legally entitled to collect overtime wages as outlined in the FLSA and that the policy of Sepracor to not pay overtime wages to Plaintiffs and similarly situated current and former Sepracor employees working as  Pharmaceutical Sales Specialists was, and continues to be, illegal and improper and in violation of the provision of the FLSA;

D.       Declare that the actions of Sepracor in failing to pay overtime wages as previously outlined were willful and that a three year statue of limitations should apply for Plaintiffs and all those similarly situated who opt-in to this collective action for collecting the overtime wages properly due them from Sepracor;

E.       Declare that time spent by the Plaintiffs and Pharmaceutical Sales Specialists at working lunches, performing work and required duties at the home office and in travel from the home office to the first appointment/contact of the day and then returning home from the last appointment/contact of the day is compensable time under the FLSA and the Portal to Portal Act of 1947;

F.       Enter a judgment against Sepracor in an amount to be proved at trial as compensation to Plaintiffs and all those similarly situated who opt-in to this collective action for the overtime wages that Sepracor illegally and improperly withheld in violation of the FLSA;

G.       Declare that Plaintiffs and all those similarly situated who opt-in to this collective action are entitled to collect liquidated damages equal to the amount of their actual damages;

H.       Award Plaintiffs and all those similarly situated who opt-in to this collective action

interest at the highest rate allowable on their unpaid overtime wages from the time that Sepracor was legally obligated to pay those overtime wages;

I.      Award Plaintiffs and all those similarly situated who opt-in to this collective action prejudgment interest on all liquidated sums awarded at the highest legal rate allowable;

J.      Award Plaintiffs and all those similarly situated who opt-in to this collective action interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

K.      Award Plaintiffs and all those similarly situated who opt-in to this collective action their reasonable attorneys' fees, expenses and costs;

L.      Order that Sepracor will comply with the provisions of 29 U.S.C. § 215(a)(3) regarding the prohibition of punitive action and retaliation against any current or former Sepracor employee for participation in this action either as a named Plaintiff, as someone similarly situated who has joined the case as an opt-in or as a witness;

M.      Retain jurisdiction over this action to ensure full compliance with the Court's orders and require Sepracor to file such reports as the Court deems necessary to evaluate such compliance; and

N.      For such other and further relief as this Court deems proper and just under the circumstances.

1

**DATED** this 14th day of May, 2008.

2

**JACKSON WHITE**

3

4
 s/ Michael R. Pruitt
Michael R. Pruitt, No. 011792

5
40 N. Center Street, Suite 200
Mesa, Arizona 85201

6
Attorneys for Plaintiff

7
F:\GHI\Greeves\Collective.OT\Pldgs\Complaint.Collective.Greeves.wpd

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26